2004 ME 142

**COMMERCE BANK AND TRUST COMPANY**

v.

**Nancy S. DWORMAN.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Oct. 6, 2004.

Decided: Nov. 22, 2004.

Rita M. Farry, Esq., Kimmel & Beach, Kennebunk, for plaintiff.

Alan E. Shepard, Esq., Shepard & Read, Kennebunk, for defendant.

Panel: SAUFLEY, C.J. and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Nancy S. Dworman appeals from a judgment of the Superior Court (York County, *Brennan, J.*) denying her motion to dissolve an ex parte attachment. Dworman contends that the court erred when it declined to dissolve the attachment because Maine does not have jurisdiction of the underlying action. Because Maine courts may exercise personal jurisdiction over Dworman pursuant to the long arm statute, 14 M.R.S.A. § 704–A (2003), we affirm the judgment.

1. Service of the suit was accomplished by delivery of the summons and complaint to Dworman's husband at the Ogunquit property in December 2003.

2. Commerce Bank filed a motion for ex parte attachment and trustee process pursuant to

## I. CASE HISTORY

[¶ 2] Dworman is a Massachusetts resident. She has had connections with Maine since 1986 when she purchased a home in Ogunquit. Dworman maintains that her Ogunquit property is merely a "seasonal residence." However, the available record would allow a court to conclude that Dworman has significant contacts with the State. In addition to owning a home and paying taxes, the record indicates that Dworman applied for and received a number of permits in Maine including a wetland alteration permit, multiple building permits and a certificate of occupancy. There is also evidence that Dworman uses the Ogunquit property as more than a seasonal residence.[1]

[¶ 3] Commerce Bank and Trust Company commenced an action in the York District Court alleging that Dworman had defaulted on commercial loans, totaling $3,984,160.75, for which she had signed as a personal guarantor for several Massachusetts entities. All negotiations and transactions relating to the loans took place in Massachusetts. The loans contained provisions stating that the laws of Massachusetts would govern. Commerce Bank is incorporated pursuant to the laws of Massachusetts, and its principal place of business is in Massachusetts.

[¶ 4] When Commerce Bank filed the action, it also sought an ex parte attachment of the Ogunquit property.[2] M.R. Civ. P. 4A(g). In an affidavit in support of the attachment, Commerce Bank asserted that Dworman has tried to shield property

M.R. Civ. P. 4A(g) and 4B(i) and attachment and trustee process in the amount of $2,100,000 was granted. Only the attachment of real estate is at issue here, and the opinion will only reference attachment.

from a judgment against her by transferring property from her name into trusts and by using her Ogunquit property to secure a loan from a foreign lender. The District Court (York, *Wheeler, J.*) granted Commerce Bank an ex parte attachment of Dworman's Ogunquit property in the amount of $2,100,000.

[¶ 5] Dworman filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(1), (2) and a motion to dissolve the attachment pursuant to M.R. Civ. P. 4A(h). The case was then removed to Superior Court, and the court denied both motions. Action in the case was stayed "pending further order." The reason for that stay was deference to litigation in Massachusetts. Commerce Bank has commenced a parallel action against Dworman in Massachusetts and obtained a pre-judgment attachment against her assets there.

[¶ 6] Dworman appealed the denial of her motion to dissolve the attachment. She contends that Maine courts do not have authority to exercise personal jurisdiction over her, or in rem jurisdiction over her Ogunquit property.

## II. STANDARD OF REVIEW

[¶ 7] An order for attachment is immediately appealable as an exception to the final judgment rule. *Liberty v. Liberty,* 2001 ME 19, ¶ 10, 769 A.2d 845, 847. We review an order for attachment to determine if it is within the range of a sustainable exercise of the court's discretion and if any findings are the result of clear error. *Id.* ¶ 11. Issues of statutory interpretation are reviewed de novo. *State v. McLaughlin,* 2002 ME 55, ¶ 5, 794 A.2d 69, 72.

[¶ 8] When a court's jurisdiction is challenged, the plaintiff bears the initial burden of establishing that jurisdiction is proper. *Interstate Food Processing Corp.*

*v. Pellerito Foods, Inc.,* 622 A.2d 1189, 1191 (Me.1993). "When there has been no testimonial hearing and the court proceeds on the parties' pleadings and affidavits, the plaintiff need only make a *prima facie* showing that jurisdiction exists." *Id.* The record is reviewed in the manner most favorable to the written allegations supporting jurisdiction. *Id. See also Bickford v. Onslow Memorial Hospital Foundation, Inc.,* 2004 ME 111, ¶ 10, 855 A.2d 1150, 1155.

## III. LEGAL ANALYSIS

[¶ 9] In *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the United States Supreme Court abolished prior distinctions between "in personam" and "in rem" or "quasi in rem" jurisdiction as a basis for a state to assume jurisdiction over a cause of action based on a claim against an individual. The court observed that: "The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state court jurisdiction that is fundamentally unfair to the defendant." *Id.* at 212, 97 S.Ct. 2569.

[¶ 10] The Court then applied the due process, minimum contacts standard it had adopted in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), to assertions of state court jurisdiction based on either personal contacts or location of property within a state. *Shaffer,* 433 U.S. at 213, 97 S.Ct. 2569. In *Shaffer,* the Court determined that ownership of stock in a Delaware corporation created insufficient contacts with Delaware to support a stockholders' derivative suit involving a Delaware corporation, where the stock certificates were not physically present in Delaware, *id.* at

192, 97 S.Ct. 2569, and it was not alleged that the defendants had "ever set foot in Delaware" or that any act related to the cause of action occurred in Delaware, *id.* at 213, 97 S.Ct. 2569. Concurring opinions by Justice Powell and Justice Stevens emphasized that the rule announced by the Court might be different had the defendants owned real estate in Delaware. *Id.* at 218–19, 97 S.Ct. 2569.

[¶ 11] The minimum contacts rule announced in *International Shoe Co.* holds that due process demands that a defendant have sufficient contacts with a state to make it reasonable to require the defendant to defend the particular suit that is brought in the state. *International Shoe Co.*, 326 U.S. at 317, 66 S.Ct. 154. *See also Interstate Food Processing Corp.*, 622 A.2d at 1192.

■ [¶ 12] Applying the minimum contacts requirement, we have held that Maine's jurisdiction over nonresident defendants is controlled by our long arm statute, 14 M.R.S.A. § 704–A (2003), and the Due Process Clause of the Maine Constitution. ME. CONST. art. I, § 6–A; *Murphy v. Keenan,* 667 A.2d 591, 593 (Me. 1995). The extent of Maine jurisdiction is coextensive with that allowed by the Due Process Clause of the United States Constitution. U.S. CONST. amend. XIV, § 1. *Bickford,* 2004 ME 111, ¶ 10, 855 A.2d at 1155; *Murphy,* 667 A.2d at 593.

[¶ 13] The relevant provisions of our long arm statute state:

2. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

. . . .

C. The ownership, use or possession of any real estate situated in this State;

. . . .

I. Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

14 M.R.S.A. § 704–A(2).

■■ [¶ 14] For the purpose of exercising personal jurisdiction over a nonresident defendant, due process is satisfied when three conditions are met: (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. *Bickford,* 2004 ME 111, ¶ 10, 855 A.2d at 1155; *Murphy,* 667 A.2d at 593. The plaintiff must prove the first two conditions; the burden then shifts to the defendant to prove the negative of the third condition. *Bickford,* 2004 ME 111, ¶ 10, 855 A.2d at 1155.

### A. Interest in the Subject Matter of the Litigation

■ [¶ 15] An analysis of whether a legitimate state interest exists goes beyond the State's "interest in providing its citizens with a means of redress against noncitizens," and includes factors such as the protection of state "industries, the safety of its workers, or the location of witnesses and creditors within its border." *Murphy,* 667 A.2d at 594. Maine has a legitimate interest in (1) upholding the attachment of property as an accommodation to collection efforts in courts of other jurisdictions, and (2) preventing debtors from using our boundaries as a shelter to shield

their persons and their Maine real estate from process and creditors. Thus, the first condition for jurisdiction over this action, to enforce Dworman's personal guarantees and to attach her real estate to provide security for any judgment, is met.

## B. Anticipation of Litigation in Maine

■ [¶ 16] To reasonably anticipate litigation in a particular jurisdiction, one must purposefully avail oneself of the privilege of conducting activities within the jurisdiction and benefit from the protection of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

[¶ 17] Dworman's contacts with the State of Maine were not merely fortuitous or incidental. She purposefully availed herself of the benefits and protections of Maine laws. Dworman benefited from state and municipal public services by purchasing residential property here, by granting a mortgage on the property, and by obtaining building and occupancy permits for it. She used her Maine real estate to support applications for loans, and Commerce Bank asserts that she attempted to conceal assets by attempting to encumber her Maine property with a mortgage to an offshore entity in the British Virgin Islands. Service of the suit was accomplished by delivery of the summons and complaint to Dworman's husband at the Ogunquit property in December 2003. Dworman also demonstrated that she anticipated litigation in Maine when she admitted that she was aware that her Ogunquit property could at some point be subject to an execution if a judgment is obtained against her in Massachusetts. The second condition for personal jurisdiction to attach is met.

## C. Traditional Notions of Fair Play and Substantial Justice

■ [¶ 18] Traditional notions of fair play and substantial justice require the nonresident defendant to have minimum contacts with the forum state. *Shaffer,* 433 U.S. at 213, 97 S.Ct. 2569; *Interstate Food Processing Corp.,* 622 A.2d at 1192. In this analysis we consider "the nature and purpose of a defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties." *Labbe v. Nissen Corp.,* 404 A.2d 564, 570 (Me.1979).

[¶ 19] Litigation of this action in Maine is consistent with traditional notions of fair play and substantial justice. Dworman has had purposeful contact with the State for eighteen years. There is a risk that Commerce Bank may not recover from Dworman if Maine does not exercise jurisdiction. Finally, jurisdiction is being sought only for the purpose of attaching Dworman's property. Any further action is stayed pending litigation of the underlying action that is proceeding in Massachusetts.

[¶ 20] Maine courts may exercise personal jurisdiction over Dworman because: (1) there are minimum contacts between Dworman and the State of Maine; (2) it may be unfair to Commerce Bank if Maine does not exercise personal jurisdiction over Dworman; and (3) it is neither unfair nor inconvenient for Dworman to be subjected to personal jurisdiction in Maine. Accordingly, the Superior Court did not err in declining to dissolve the attachment. Commerce Bank has established a sufficient basis for personal jurisdiction pursuant to our long arm statute, 14 M.R.S.A. § 704–A.

[¶ 21] Because we conclude that jurisdiction is established by the long arm statute, we do not address Commerce Bank's sepa-

rate contention that the attachment is justified based on in rem jurisdiction pursuant to 14 M.R.S.A. § 504 (2003).

The entry is:

Judgment affirmed.