STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss                           CIVIL ACTION
                                        DOCKET NO. AP-2004-05
                                        AMM = PEN - 3/29 2005

AUDREY L. STREET,                    )

              Petitioner,            )

v.                                   )              DECISION AND
                                     )              ORDER
STATE OF MAINE, BOARD OF             )
LICENSING OF AUCTIONEERS,            )
                                     )
              Respondent             )

FILED & ENTERED
SUPERIOR COURT

MAR 29 2005

PENOBSCOT COUNTY

## BEFORE THE COURT

This matter is before the Court on appeal pursuant to 5 M.R.S.A. §§11001-11008

(Supp. 2004) and Rule 80C of the Maine Rules of Civil Procedure from a decision of the

Respondent, State of Maine, Board of Licensing of Auctioneers (herein "**Board**"),

imposing two warnings and two $150.00 fines for violating 32 M.R.S.A. §§ 291(1)(B),

298 (Supp. 2004). The Board also voted to require Street to pay $959.29 as the actual

costs incurred by the Board for the hearing.

## Background

The Petitioner, Audrey Street, has been a licensed auctioneer in Maine since May

29, 2002. She holds auctions at "Audrey's Auction and Treasure Barn" (herein "**Barn**")

in Howland, Maine. The Complainant, A.P. Wood is an auctioneer licensed in several

states, but not Maine. Wood sells a variety of goods with prices ranging from $1.00 to

$45.00. He transports his goods in a large trailer and travels extensively.

Wood contacted Street in September 2002. Street and Wood came to an

unwritten oral agreement to hold a joint auction at the Barn on September 6, 2002. Street

1

advertised the auction in the local newspaper and radio. Shortly before the auction, Street received information calling Wood's character into question. As a result, Street chose not to auction off any of her goods and not to have her auctioneer "call" the auction. However, Wood did leave his trailer with his goods on Streets property before the auction. On September 6, 2002, Street and her family assisted Mrs. Wood in moving the items into the Barn. Street opened the auction, but Wood called the auction, asking for and accepting bids. The Record shows Wood did not necessarily accept the highest bidder, but declared the item to be sold when a pre-determined price was reached. Street's family or employees helped organize the auction. They recorded every item that was sold, kept records of the prices, sold the items by accepting payment and inventoried the sales. Street would help Wood throughout the auction by handing him the next items to be sold after the previous item was auctioned off and she remained at the auction podium. In addition, Street's employees retained the proceeds of the sale, paid the state sales tax and transferred the proceeds to Mrs. Wood. In return for these services, Street received a ten percent "buyer's premium" for all of the goods sold.[1] Throughout the entire process, Wood was, lawfully, acting under Street's auctioneer license as Wood was not licensed in Maine. 32 M.R.S.A. § 286(7).

At the conclusion of the auction, Street kept control of the proceeds for a total of two days. On September 9, 2002, Street and Wood agreed on a final payment of $2,853.00 as Wood's share of the proceeds of the auction. There was some dispute over the amount, but the parties agreed to this amount to settle the account. This occurred after Street and Wood spent approximately three hours going through each transaction.

---

[1] A "buyer's premium is defined as "a premium usually described as a percentage of the final bid to be paid by the buyer as part of the purchase price." 32 MR.S.A. § 284(5) (Supp. 2004).

However, when Wood requested a copy of the computerized inventory, Street did not give it to him. Even after repeated phone calls, Street did not provide the inventory. At the hearing, Street claimed that she mailed the inventory, but she could not remember the address, when she sent it and could not otherwise prove this claim. The Board found that it was not credible to believe that Street had sent the inventory within thirty days of the auction, as required by statute. 32 M.R.S.A. § 284(9). As a result, Wood never received a written inventory that could provide a tangible record of the gross proceeds of the auction for business tax and personal purposes.

Wood filed a complaint with the Board and the Board found that Street had committed two violations. First, the Board found that Street had violated 32 M.R.S.A. § 298 by conducting an auction without first having a written contract with the consignor of the property to be sold. Second, the Board found that Street had violated 32 M.R.S.A. § 291(1)(B) by failing, within a "reasonable time" to "account for or remit any money or property coming into [Street's] possession." This appeal followed.

## Discussion

### A. Standard of Review

The Court's review of the Respondent's determination is very limited. Agency rulings may be reversed or modified on appeal only if the Court determines that they are: (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by bias or error of law, (5) unsupported by substantial evidence on the whole record or (6) arbitrary, capricious or characterized by abuse of discretion. 5 M.R.S.A § 11007(4)(C) (Supp. 2004). "The burden of proof clearly rests with the party seeking to overturn the decision

of an administrative agency." Seven Islands Land Co. v. Maine Land Use Regulation Comm'n., 450 A.2d 475, 479 (Me. 1982). Finally, while this Court usually reviews agency statutory interpretation de novo, when ruling on an agency interpretation of a statute administered by the agency, this Court will give great deference the agency's interpretation of the statute, unless the statute "plainly compels a contrary result." Commerce Bank and Trust Co. v. Dworman, 2004 ME 142, ¶ 7, 861 A.2d 662, 665; Berry v. Bd. of Trustees, 663 A.2d 14, 16 (Me. 1995).

**B.    32 M.R.S.A. § 298**

32 M.R.S.A. § 298 states that "[a]n auctioneer may not conduct an auction in this State without first having a written contract with the consignor of any property to be sold." Street argues that no "auction" took place, that she was not an "auctioneer" and that no "consignment" took place."

*1.    "Auction"*

32 M.R.S.A. § 284(1) defines an "auction" as an "offering of goods or real estate by means of exchanges between an auctioneer and bidders." Street argues that because Wood did not sell the item to the highest bidder as in a traditional auction, no "auction" took place. However, the definition of an "auction" in the statute is clear and unambiguous. It does not require an auctioneer to sell the item to the highest bidder, it merely requires the offering goods by means of "exchanges" between an auctioneer and bidders. Here, based on the evidence in the Record, the Board had substantial evidence to find that an "auction" took place.

4

## 2. *"Auctioneer"*

The statute defines an "auctioneer" as "any person who conducts, advertises or offers that person's service to conduct auctions; contracts or offers to contract with consignors of real or personal property, with or without receiving or collecting a fee, commission or other valuable consideration; or sells or offers to sell property at auction." 32 M.R.S.A. § 284. Street argues that she was not an "auctioneer" under the statute. She argues that she, her family and employees acted only in an administrative capacity and merely facilitated the auction.

However, when applying the undisputed facts, it is apparent that Street, her family and her employees' activities fall within the definition of an "auctioneer." Street offered her services to Wood so that he could call an auction at her facility; she contracted with a consignor of real or personal property when she contracted with Wood and held his property on her property before the auction[2]; and she offered, in the advertisements, to sell property at the auction. Her employees helped run the auction, they kept track of bids, inventory and collected payment for the goods from bidders. The Board had substantial evidence to find that Street was not sufficiently disassociated from the auction.

Street also associated herself with the actual calling of the auction with her constant presence at the auction podium and, most telling, when she allowed Wood, not licensed to conduct auctions in Maine, to legally conduct the auction under her license as her "assistant". A person assisting an "auctioneer" in conducting an auction does not need to be licensed as long as the licensed "auctioneer" is physically present and assumes

---

[2] See *infra* for how a "consignment" took place.

full responsibility for the sale. 32 M.R.S.A. § 286(7). Street is hard-pressed to argue that she was not an "auctioneer" when she legally assumed that role when she allowed the auction to take place under this statute by letting Wood use her license. Street argues that *she* was the "assistant and cites inapplicable case law. See Ritchie Bros. Auctioneers Int'l v. E. A. Contracting Inc., 706 A.2d 874 (Pa. Sup. Ct. 1998). Contrary to her contention, this case does not help Street's argument as the case merely interpreted Pennsylvania's auctioneer licensing law not to require a representative of an auction company to be licensed. Id. at 876.

The only thing that Street did not actually do was "call" the auction. Given the deference this Court must show to agencies when they interpret the statutes that they are charged with administering, Commerce Bank, 2004 ME 142, ¶ 7, 861 A.2d at 665, this Court finds that the broad definition of an "auctioneer" in the statute encompasses the numerous activities that Street, her family and employees undertook on September 6, 2002.

### 3. "Consignment"

Street argues that Wood never "consigned" any goods to her, so he was not a "consigner" and therefore, under 32 M.R.S.A. § 298, she was not required to form a written contract with him. The statute defines a "consignor" as "the bona fide owner, agent or party in interest of the personal party or real state being offered for sale." 2 M.R.S.A. § 284(6). It is not disputed that Wood was the owner of the goods sold at the auction. The issue is whether Wood ever actually "consigned" any goods with Street.

The Board argues that a "consignment" took place when Wood left his property in Street's possession when he left his trailer, full of the goods to be sold, at her business.

Street argues that merely leaving the trailer on her property was not enough to find a "consignment." She offers the definition of consignment as involving, "the delivery of goods owned by another to an auctioneer for the purpose of sale at an auction." This definition is consistent with the Black's Law Dictionary's definition of "consign," i.e. "To transfer to another's custody or charge . . . To give (merchandise or the like) to another to sell, usu. with the understanding that the seller will pay the owner for the goods from the proceeds." BLACK'S LAW DICTIONARY 303 (7th ed. 1999). Under both definitions, Wood's act of delivering his property to Street in trust to hold for later sale at the auction qualifies as a "consignment", thus making Wood a "consignor" under the statute. The Board's finding that Street violated 32 M.R.S.A. § 298 when she failed to form a written contract with Wood was legally correct and supported by substantial evidence in the Record.

### 4. "Accounting"

The statute states that after a hearing, the Board has the authority to impose disciplinary sanctions when a licensee is found guilty of a "[f]ailure, within a reasonable time, to account for or remit any money or property coming into the licensee's possession that belongs to others;" 32 M.R.S.A. § 291(B). A "reasonable time" is defined as not more than thirty days from the date of the auction. 32 M.R.S.A. § 284(9). The Board found that Street failed to "account" for any money or property coming into Street's possession within a reasonable time after the end of the auction when she did not give Wood a written inventory of the goods sold at the auction.

Street claims that the fact that the actual paperwork was not given to Wood does not mean that she did not provide an "accounting." She points to the undisputed fact that

she reviewed the records after the auction with Wood for three hours. They went over each item and Wood did have all the information he needed to determine the amount of the gross proceeds. Further, she argues that because they agreed upon an amount to settle a dispute over $25.00 that an accord and satisfaction took place and this Court should honor the agreement and find that an "accounting" took place.

The issue here is whether Street had to deliver a written inventory to Wood when he asked for it, to have provided an "accounting" under the statute. The fact that an accord and satisfaction may have taken place may preclude Wood from bringing a breach of contract claim, but it does not preclude the Board form acting under the statute.

The fact remains that Wood asked for a written accounting and that Street, for whatever reason, failed to deliver it. Street argues that the oral accounting was sufficient, because a written inventory would not have provided Wood with any more information that he did not already have.

Whether the statute should have been interpreted to find that the oral accounting was insufficient in these circumstances is within the discretion of the Board. This Court will show deference to the Board's considerable expertise in this area. Commerce Bank, 2004 ME 142, ¶ 7, 861 A.2d 662, 665. While Street argues that the term "accounting" is not a technical term and that this Court should review this determination de novo, the fact remains that the Board deserves deference in this area as it is familiar with what is acceptable and normal in the auction industry. Its conclusion that, in this case, a written inventory was necessary to constitute an "accounting" under the statute is within its discretion and is not an error of law. Wood was not acting unreasonably by demanding a

written inventory as this would have provided him with the means to, later, double check the information and would have provided an accurate and convenient business record.[3]

As an alternative argument, Street contends that the statute should be interpreted to allow a licensee to either account for *or* remit "money or property coming into the licensee's possession . . . ." 32 M.R.S.A. § 291. The Board rejected this proposition. It found that the statute required a licensee to both account for *and* remit money and property in order to avoid disciplinary action under the statue. It relied on 1 M.R.S.A. § 71.2 that states that "the words 'and' and 'or' are convertible as the sense a statute may require."

When interpreting a statute, the main objective is to give effect to the Legislature's intent. To determine that intent, the Court looks first to the statute's plain meaning. If there is no ambiguity, then the Court need proceed no further. If, however, ambiguity exists, then the Court must look beyond that language to the legislative history. McLaughlin v. Superintending Sch. Comm. of Lincolnville, 2003 ME 114, ¶ 13, 832 A.2d 782, 786. See also, State v. Bjorkaryd-Bradbury, 2002 ME 44, ¶ 9, 792 A.2d 1082, 1084; Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n, 593 A.2d 663, 665 (Me. 1991). Finally, a Court should avoid results that are absurd, inconsistent, unreasonable or illogical. International Paper Co. v. Bd. of Envtl. Prot., 629 A.2d 597, 599-600 (Me. 1993).

Here, the Board argues that interpreting the statute to allow a licensee to either remit the proceeds but not account for them or vice-versa would mean that a consignor

---

[3] Street argued at the hearing that a written accounting was mailed within thirty days of the auction, but the Board found the claim not to be credible and this Court will not overturn such a determination, especially, when Street is not arguing that such a determination was not supported by substantial evidence.

9

would either never receive their money or would never be able to double check to make sure that they received the proper amounts of each of their items. Interpreting the statute as Street is arguing would lead to this absurd result.

Furthermore, a plain reading of this unambiguous statute reveals that it is designed to provide the Board with certain powers, not to delineate the responsibilities of a licensee. Thus, the "or" in the statute is properly read to mean that the Board has the power to issue sanctions when a licensee *either* fails to remit "or" when the licensee fails to account for any of the money or property from an auction. To empower a licensee to thwart the statute by doing one or the other without consequence would not only yield an absurd result, it would arbitrarily limit the Board's powers to protect consignors.

## CONCLUSION

For the foregoing reasons, the Court affirms the Board's decision that Street failed to form a written contract with Wood under 32 M.R.S.A. § 298 and failed to "account" to Wood within a reasonable time under 32 M.R.S.A. § 291(B).

Accordingly, the entry is:

Decision of the Respondents, State of Maine, Board of Licensing of Auctioneers, is

**AFFIRMED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED: March 29, 2005

Justice, Maine Superior Court

10

Date Filed __3/8/04__      PENOBSCOT_____      Docket No. __AP-2004-5_____
                              County

Action __RULE 80C APPEAL_____
  **JUSTICE JEFFREY L. HJELM RECUSED**
  **ASSIGNED TO JUSTICE ANDREW M. MEAD**


AUDREY L. STREET                          vs. MAINE BOARD OF LICENSING OF AUCTIONEERS

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| RALPH A. DYER, ESQ<br>477 CONGRESS ST - P O BOX 9739-5039<br>PORTLAND, ME.  04104 | DENNIS E. SMITH, AAG<br>6 STATE HOUSE STATION<br>AUGUSTA, ME.  04333-0006 |

| Date of Entry | |
|---|---|
| 3/8/04 | Petition for Review of Final Agency Action Pursuant to M.R.Civ.P Rule 80C filed.   (Exhibit A attached) |
| 3/8/04 | Certificate of Service filed by Petitioner. |
| 3/12/04 | Notice of Assigned Justice filed.  Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Andrew M. Mead. /s/Margaret Gardner, Clerk. Copy forwarded to Petitioner's Attorney and to Defendant, Maine Board of Licensing of Auctioneers. |
| 3/12/04 | Appearance and Statement of Position Pursuant to 5 M.R.S.A. § 11005 filed by Dennis E. Smith, AAG, on behalf of the Respondent. |
| 4/6/04 | Certification of Administrative Record filed by Respondent. |
| 4/6/04 | Original Transcript of Hearing in RE:  Audrey Street AUC-168 before James Smith, Hearing Officer on 12/3/03 and 2/4/04 filed by Respondent. |
| 4/6/04 | Notice and Briefing Schedule 80C Appeal of Final Agency Actions filed. Copy forwarded to all attorneys of record. |
| 4/29/04 | Motion to Correct or Modify Agency Record pursuant to 5 M.R.S.A. Sec. 11006 (2), and M.R.Civ.P. 7 & 80C(d) with attachment filed by Respondent. |
| 5/6/04 | Court's ruling on Respondent's Motion to Correct or Modify Agency Record Pursuant to 5 M.R.S.A. § 11006(2), and M.R.Civ.P. 7 & 80C(d) filed 4/29/04; Granted.  (Mead, J.)  Copy forwarded to all attorneys of record. |
| 5/18/04 | Petitioner's Motion for Enlargement of Time to Deliver Brief Review of Agency Action, M.R.Civ.P. Rule 80C filed. |
| 5/18/04 | Certificate of Service filed by Petitioner. |