STATE OF MAINE                          SUPERIOR COURT
ANDRSCOGGIN, ss.                        CIVIL ACTION
                                        DOCKET NO. CV-08-181
                                        JAW - AND- 12/13/2010

                                        RECD AUBSC 12/13/10

KENNETH WOLF

Plaintiff,


v.                                      AMENDED ORDER ON JURISDICTION


WILLIAM P.J. CULLEN

Defendant.


This matter continues to be before the court on Cullen's motion to dismiss for

lack of personal jurisdiction.[1] After considering the parties memoranda filed at the

Court's request, the court enters this amended order and accepts jurisdiction in Maine as

being consistent with the constitutional requirements of due process.

This case involves a dispute between a Maine citizen and an Irish citizen

concerning breach of an alleged contractual obligation to purchase Wolf's right to

purchase an Eclipse 500 private jet aircraft. Wolf filed a complaint for breach of contract

and promissory estoppel. Cullen denies there is a contract and counters that Maine courts

lack personal jurisdiction over him because he is not a Maine resident, has never been to

Maine, owns no property in Maine, and does not operate a business in Maine.[2] Cullen

further argues that even if the court were to find the existence of a contract, a single

---

[1] Wolf originally filed his complaint with the Androscoggin County Superior Court. Cullen, asserting diversity jurisdiction, removed the action to the United States District Court. The District Court granted in November 2008 Wolf's motion to remand.

[2] Cullen is an author and some of his books may have been sold to distributors who distribute books in Maine; however, the case at bar does not arise out of Cullen's book or book sales.

contract coupled with the use of interstate communications does not establish a basis for exercising jurisdiction over a nonresident.

Wolf responds that the contract in this case has a forum selection clause that represents an affirmative consent to jurisdiction in Maine. There are three documents attached to the complaint, including (1) the Escrow Agreement, (2) Assignment, Consent and Acknowledgement – Purchase Agreement and (3) Letter Agreement. It is these documents that Wolf contends were sent to Cullen for his execution and which Cullen did not return after executing them, but according to Wolf delivery is not necessary to constitute a binding contract. Moreover, Wolf argues that the Letter Agreement contains a Maine forum selection clause.

Cullen responds the parties did not mutually consent and therefore there is no contract. Cullen further argues that even if there is a binding contract, these three documents comprise the contract between the parties and each document specifies a different forum, rendering the Maine forum selection clause of the Letter Agreement invalid.

## Facts

Where, as here, "the hearing is nontestimonial and the court proceeds upon the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing that jurisdiction exists," and the plaintiff's written allegations of jurisdictional facts should be construed in its favor. *Electronic Media International v. Pioneer Communications of America, Inc.,* 586 A. 2d 1256, 1259 (Me. 1991)(citations omitted). However, the prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. *Id.* Under the prima facie standard, the court

2

considers only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-tec Products, Inc.*, 967 F. 2d 671, 675 (1ˢᵗ Cir. 1992) "The plaintiff must go beyond the pleadings and make affirmative proof." *Id.* (internal quotation marks omitted). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts. The court, however, is not obligated to credit conclusory allegations, even if uncontroverted." *Alliantgroup, L.P. v. Feingold*, 2009 U.S. Dist. LEXIS 34730, 8-9 (citations and internal quotation marks omitted).

Applying these principles, the court finds the following facts relevant to personal jurisdiction. In 2003, Wolf signed an Amended Platinum Level Deposit Agreement with Eclipse Aviation Corporation (EAC) to purchase an Eclipse 500 aircraft. By Spring 2007, Wolf decided to sell his right to the purchase the aircraft. At some point before June 2007, Wolf learned that Cullen was interested in Wolf's right to purchase an Eclipse 500 aircraft. Cullen had learned through a friend in St. Louis, Missouri that Wolf may have for sale a right to purchase an Eclipse 500 aircraft. Cullen Aff. at ¶ 9. The Eclipse 500 is an aircraft that is manufactured and sold by EAC, a Delaware corporation with its headquarters in Albuquerque, New Mexico. EAC is in the business of manufacturing and selling private jet aircraft.

Upon hearing of Cullen's interest, Wolf contacted Cullen by email dated June 18, 2007, asking what Cullen would pay for the right to purchase the aircraft. Cullen Aff. at ¶ 12. Cullen responded by e-mail, asking the price for a cash deal. *Id.* On or about June 20, 2007, Wolf emailed Cullen, stating that he already had an offer for $1.7 million but would sell Deposit Agreement to Cullen for $1.725 with $200,000 nonrefundable deposit

3

to an escrow account. Cullen Aff. at ¶ 13. Wolf's email also contained proposed payment details. *Id.* Cullen responded that the $1.725 million was generally acceptable as a final figure, but asked for an alteration in some of the payment terms, including splitting in half payment of the profit figure until the actual delivery date, and stated he needed the aircraft's full specifications confirmed. Cullen Aff. at ¶ 14. Later the same day, Wolf emailed Cullen asking for a fax number where he could send a contract and options for review and stated it "would be preferable to have a clean deal with full payment and transfer of ownership asap for a number of reasons." Cullen Aff. at ¶ 15. The next day, Wolf faxed to Cullen the contract with EAC as well as information on the aircraft's specifications and options. Cullen Aff. at ¶ 17.

Through email exchanges, Wolf and Cullen reached a deal concerning the sale and assignment of Wolf's rights in the aircraft for $ 1.725. The parties New York and Maine counsel worked to memorialize the agreement reached between Wolf and Cullen. Haley Decl. at ¶ 3. After being informed by Cullen's New York counsel that the final language of the documentation (letter agreement, assignment of purchase and escrow agreement) was in order, on August 9, 2007 counsel for Wolf sent by overnight delivery to Cullen's New York counsel the contract documents as executed by Wolf. Haley Decl. at ¶ 4. The Letter Agreement contained the following clause:

> This agreement shall be governed by Maine law. If the parties are not able to resolve a dispute, they will submit the dispute to binding arbitration before a single mutually acceptable arbitrator. The arbitration will be conducted according to the then current rules for commercial arbitration published by the American Arbitration Association, in Portland, Maine.

Haley Decl. at ¶ 9. When Wolf's counsel did not receive back the signed documents, he spoke with Cullen's New York counsel in early September 2007, who confirmed that

4

Cullen had sent the signed documents to her but had not authorized her to deliver them to Wolf or his attorney. Haley Decl. at ¶ 8.

When Wolf emailed Cullen to encourage return of signed documents so that the "deal could be concluded", Cullen notified Wolf on September 6, 2007 that he would not be finalizing the deal. Cullen decided to not accept Wolf's offer to sell his right to purchase the aircraft because of the delay, the problems with specifications as well as other reasons. Cullen Aff. at 22.

The question for trial is whether the parties settled on all the essential terms of the sale of the rights to purchase the aircraft such that the parties intended that they had a deal free of any written formalization, including a final execution and/or delivery, to make it enforceable. At this stage of the proceedings, on a motion to dismiss on jurisdictional grounds, the court must resolve this issue in plaintiff's favor.

## Jurisdiction

Maine's long arm statute "allows a court to exercise jurisdiction over nonresident defendants to the extent authorized by the Due Process Claus of . . . the United States Constitution." *Connelly v. Doucette*, 2006 ME 124, ¶ 6, 909 A. 2d 221, 223 (citations omitted). The Due Process Clause is satisfied when, "(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 14, 861 A. 2d 662, 666 (citations omitted). When the defendant challenges the jurisdiction of the court, the plaintiff has the burden on the first two prongs, then, if those prongs are established, the burden shifts

5

to the defendant to disprove the third prong. *Id.* "The record must be construed in the manner most favorable to the party asserting jurisdiction." *Cavers v. Houston McClane Co., Inc.*, 2008 ME 164, ¶ 19, 958 A. 2d 905, 910.

1.    Legitimate Interest in Subject Matter of the Litigation

Turning to the first element of the three-part test, the court finds that Maine has a legitimate interest in the subject matter of this litigation. Maine has an interest in providing Maine citizens a means of redress against nonresidents. Maine also has a substantial and legitimate interest in ensuring that forum selection clauses are not rendered meaningless. See *Genujo v. Zorn*, 2008 ME 50, ¶ 22, 943 A. 2d 573, 580. Viewing the facts in a light most favorable to Wolf, the party asserting jurisdiction, there was a contract in the form of the Letter Agreement that was agreed to by the parties and that specified the parties would submit their dispute to binding arbitration in Portland, Maine. A party who agrees to Maine as the forum for arbitration impliedly consents to personal jurisdiction in Maine courts. *Id.*

2.    Reasonable Anticipation of Litigation in Maine

The second prong of anticipating litigation in Maine is whether Cullen reasonably could have anticipated litigation in Maine. "[O]ne must purposely avail oneself of the privilege of conducting activities within the jurisdiction and benefit from the protection of its laws." *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 16, 861 A. 2d 662, 667. This requires sufficient minimum contacts for a defendant to have reasonably anticipated being haled into court in Maine. *Boit v. Gar-Tec Products*, 967 F. 2d 671, 679 (1st Cir. 1992). The point is to guard against a nonresident defendant being haled into a forum based on "random, isolated or fortuitous" contacts with that jurisdiction.

6

*Unicomp v. Hacros Pigments, Inc.*, 994 F. Supp. 24, 28 (D. Me. 1998). According to the

Maine Law Court,

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot . . . . [A] contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real objects of the business transactions. It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing – that must be evaluated in determining whether the defendant purposely established minimum contacts within the forum.

*Caluri v. Rypkema*, 570 A. 2d 830, 832 n. 5 (citations and quotations marks omitted).

Applying these standards to the facts of this case, although Cullen did not

purposely set out to find a Maine business or Maine citizen in order to conduct business

in Maine and gain the protection of Maine, he did agree in the Letter Agreement that not

only Maine law would govern their disputes but also that they would submit disputes

arising out of the Letter Agreement to arbitration in Maine. Defendant's argument that

concerning conflicting forum selection clauses is without merit. The other documents

include parties or entities that are not part of this pending litigation in Maine and relate to

issues not necessary to the resolution of a dispute arising out of the Letter Agreement. If

the parties formed a valid contract in the Letter Agreement, then Cullen consented to

personal jurisdiction in Maine for the resolution of disputes under the Letter Agreement.

By consenting to jurisdiction in Maine, Cullen has sufficient minimum contacts with

Maine for this court to exercise personal jurisdiction. A mandatory forum selection

clause, such as may exist here, can demonstrate a party's consent to jurisdiction in a

specific forum, and courts, absent a showing of fraud or overreaching in creating the

clause, enforce such consent. *Alliantgroup v. Feingold*, 2009 U.S. Dist. LEXIS at 20.

### 3. Traditional Notions of Fair Play and Substantial Justice

The third prong requires that the court analyze whether exercising jurisdiction here would not comport with the traditional notions of fair play and substantial justice. Under this prong of the due process test, the court considers all the facts of the case. *Harriman v. Demoulas Supermarkets, Inc.*, 518 A. 2d 1035, 1038 (Me. 1986). "This analysis requires consideration 'of a variety of factors including the nature and purpose of defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties.'" *Cavers*, 2008 ME at ¶ 36, 958 A. 2d at 913 (quoting *Labbe v. Nissen Corp.*, 404 A. 2d 564, 570 (Me. 1970)). Applying an agreed to forum selection clause does not undermine fairness. In the Letter Agreement, the parties anticipated and directed that their disputes be resolved in Maine in accordance with Maine law. Although the contacts may be slight, the parties nevertheless selected Maine as the forum for the resolution of their disputes and defendant has not disproved the third prong.

The entry is:

Motion to Dismiss for Lack of Jurisdiction is DENIED.

Date: December 6, 2010

Joyce A. Wheeler, Justice

8

KENNETH WOLF  - PLAINTIFF

Attorney for: KENNETH WOLF
DANIEL NUZZI  - RETAINED 09/19/2008
BRANN & ISAACSON
184 MAINE STREET
PO BOX 3070
LEWISTON ME 04243-3070


vs
WILLIAM P.J. CULLEN  - DEFENDANT

Attorney for: WILLIAM P.J. CULLEN
SCOTT QUIGLEY  - RETAINED 10/03/2008
LASKOFF & ASSOCIATES
103 PARK ST
PO BOX 7206
LEWISTON ME 04243-7206

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No  AUBSC-CV-2008-00181


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 09/19/2008

## Docket Events:

09/19/2008 FILING DOCUMENT - COMPLAINT FILED ON 09/19/2008


09/19/2008 Party(s):  KENNETH WOLF
          ATTORNEY - RETAINED ENTERED ON 09/19/2008
          Plaintiff's Attorney: DANIEL NUZZI


09/19/2008 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 09/19/2008


10/03/2008 FINDING - REMOVAL TO FEDERAL COURT ENTERED ON 10/03/2008


10/09/2009 Party(s):  WILLIAM P.J. CULLEN
          ATTORNEY - RETAINED ENTERED ON 10/03/2008
          Defendant's Attorney: SCOTT QUIGLEY


01/22/2010 NOTE - OTHER CASE NOTE ENTERED ON 12/01/2008
          CASE ORDERED REMANDED BACK TO SUPERIOR COURT.  HORNBY, J.


01/22/2010 ORDER - SPECIAL ASSIGNMENT ENTERED ON 09/18/2009
          ROBERT W CLIFFORD , ASSOCIATE JUSTICE
          ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
          PARTIES/COUNSEL


01/22/2010 NOTE - OTHER CASE NOTE ENTERED ON 10/07/2009
          JUSTICE CLIFFORD UNABLE TO ACCEPT CASE


01/22/2010 ORDER - SPECIAL ASSIGNMENT ENTERED ON 10/07/2009
          JOYCE A WHEELER , JUDGE
          ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
          PARTIES/COUNSEL


01/22/2010 Party(s):  WILLIAM P.J. CULLEN

MOTION - OTHER MOTION FILED ON 10/14/2008
FILED IN THE FEDERAL COURT BY DEFENDANT   MOTION TO CONDUCT JURISDICTIONAL DISCOVERY

01/22/2010 Party(s):  WILLIAM P.J. CULLEN
MOTION - OTHER MOTION DENIED ON 01/21/2010
JOYCE A WHEELER , JUDGE
FILED IN THE FEDERAL COURT BY DEFENDANT   MOTION TO CONDUCT JURISDICTIONAL DISCOVERY COPIES
TO COUNSEL ON 01-21-10

01/22/2010 Party(s):  WILLIAM P.J. CULLEN
MOTION - MOTION TO DISMISS FILED ON 11/20/2008
DEFENDANT'S FILED IN THE FEDERAL COURT                                    REC'D ON
2/16/10 PLT'S OPPOSITION

01/22/2010 ORDER - COURT ORDER ENTERED ON 01/21/2010
JOYCE A WHEELER , JUDGE
DEFENDANT TO FILE SUPPLEMENTAL MEMORANDA BY FEBRUARY 1, 2010; AND PLAINTIFF TO FILE
SUPPLEMENTAL MEMORANDA BY FEBRUARY 15, 2010.   COPIES TO COUNSEL ON 1-21-10

01/28/2010 Party(s):  WILLIAM P.J. CULLEN
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 01/27/2010
TO EXTEND TIME TO FILE SUPPLEMENTAL MEMORANDA (UNOPPOSED)

02/01/2010 Party(s):  WILLIAM P.J. CULLEN
OTHER FILING - OTHER DOCUMENT FILED ON 02/01/2010
DEFENDANT'S SUPPLEMENTAL MEMORANDUM TO MOTION TO DISMISS

02/02/2010 Party(s):  WILLIAM P.J. CULLEN
MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 02/01/2010
JOYCE A WHEELER , JUDGE
THE DEF SHALL FILE SUPPLEMENTAL MEMORANDA BY 2/5/10 AND THE PLT SHALL FILE SUPPLEMENTAL
MEMORANDA BY 2/19/10

12/13/2010 Party(s):  WILLIAM P.J. CULLEN
MOTION - MOTION TO DISMISS DENIED ON 12/13/2010
JOYCE A WHEELER , JUDGE
COPIES TO PARTIES/COUNSEL

A TRUE COPY
ATTEST:   _____
                              Clerk