ENTERED AUG 2 8 2014 *ppend*

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-RE-13-03

MMM-CUM-05-23-14

SCOTT H. MORTON,
GARY PATNODE,
MAINE TIMBER & BEAM, INC.,
MORTON & FURBISH AGENCY, and
MARBLES STATION DEVELOPMENT
LLC,

          Plaintiffs,

    v.

CARLL S. BURR, III,
CARLL S. BURR, JR., INC.,
HOMESOLUTIONS PROPERTIES, LLC,
and 2010-3 SFR VENTURE LLC,

          Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**
(Motion to Dismiss)
(Motion to Strike)

The present case stems from the breakdown of the business relationship between the members of Marbles Station Development, LLC (MSD), a Maine LLC formed to develop a subdivision in Rangeley, Maine. The members of MSD are Plaintiffs Scott H. Morton, Gary Patnode, Maine Timber & Beam, Inc. (Maine Timber), and Morton & Furbish Agency (M&F Agency) and Defendant Carll S. Burr, Jr., Inc. (Burr, Inc.), a Florida corporation. Defendant Carll S. Burr, III is the president of Burr, Inc.

Pursuant to M.R. Civ. P. 12(b)(6), Carll Burr and Burr, Inc. move to dismiss Counts II, III, and IX of the First Amended and Restated Complaint, as amended by the Amendment to First Amended and Restated Complaint, filed by the Plaintiffs. In Count II, Plaintiffs assert fraud, conversion, and violations of the Uniform fraudulent Transfers Act (UFTA), 14 M.R.S.

1

§§ 3571-82 (2013); and in Count III, Plaintiffs assert fraud, conversion, and UFTA violations against Burr, Inc. Count IX is styled as an action by the other members against Burr, Inc., in direct and derivative form, pursuant to the Maine LLC Act. *See* 31 M.R.S. §§ 1501-1693 (2013).

Defendants Burr and Burr, Inc. also move to strike the affidavit of Scott Morton filed by Plaintiffs with their opposition to the motion to dismiss. The affidavit elaborates on certain factual allegations within the Amended Complaint regarding property owned by MSD.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Plaintiffs' First Amended and Restated Complaint, as amended by the Amendment to First Amended and Restated Complaint Amended Complaint.[1] As noted, Carll S. Burr, III is the president of Burr, Inc., a Florida corporation. (Amend. Compl. ¶ 6.) Burr, Inc. is one of the members of MSD; the other members of MSD are Morton, Patnode, Maine Timber, and M&F Agency. (Amend. Compl. ¶¶ 1-2.) Burr, Inc. has a 75% ownership interest in MSD. (Amend. Compl. ¶ 4.)

In 2004, Burr, Inc., Patnode, Maine Timber, and M&F Agency collectively contributed $1,000,000 to MSD in exchange for their shares in MSD and for MSD's purchase of a 15-lot subdivision in Rangeley, Maine. (Amend. Compl. ¶ 10.) Morton contributed managerial services in exchange for his share in MSD, and Morton in fact became the manager of MSD. (Amend. Compl. ¶¶ 3, 10.) Burr, Inc. (80%), Maine Timber (10%), and MSD (10%) collectively own the 15-lot subdivision in Rangeley, Maine (the MSD property), which was to be an asset of MSD for development and sale of the resulting subdivision. (Amend. Compl. ¶¶ 7-9, 11.) At the time of the purchase, the members agreed that MSD would purchase the property, but Burr, Inc. would temporarily take title to an 80% interest in the real estate so it would take advantage of a

---

[1] The Amendment to First Amended and Restated Complaint that was filed on January, 30, 2014, adds several paragraphs to the First Amended and Restated Complaint. For simplicity, the Court incorporates those paragraphs into the First Amended and Restated Complaint and cites to them as one document.

like-kind transfer of the federal tax code. (Amend. Compl. ¶ 60A.) After the completion of the like-kind transfer, the members agreed that Burr, Inc. would convey its interest to MSD. (Amend. Compl. ¶ 60A.)

Defendant HomeSolutions Properties, LLC (HomeSolutions) is a Florida limited liability company with a principal place of business in New York. (Amend. Compl. ¶ 23.) Julie Burr, Carll Burr's wife, is a 50% owner of HomeSolutions.[2] (Amend. Compl. ¶ 24.) In June of 2008, HomeSolutions signed a master note for a line of credit in the amount of $1,000,000 with Rockbridge Commercial Bank (Rockbridge). (Amend. Compl. Exh. 12.)[3] As security for the HomeSolutions credit line, Carll Burr signed a personal guaranty in the amount of $1,000,000 and executed a mortgage on his vacation property in Rangeley, Maine. (Amend. Compl. Exhs. 10, 12, 17.) The amount of the credit line was increased to $2,000,000 August of 2008 and then $3,000,000 in November of 2008 (Amend. Compl. Exhs. 13-15); Carll Burr personally guaranteed each increase in debt (Amend. Compl. Exhs. 18, 26).

At some point in 2008, Burr had Rockbridge prepare documentation for a mortgage on the MSD property to secure the HomeSolutions credit line; the mortgage documents were to be signed by the record owners of the subdivision: MSD, Maine Timber, and Burr, Inc. (Amend. Compl. ¶ 16.) The listed signatory for MSD in the documentation was Morton as the manager of MSD. (Amend. Compl. Exh. 6A.) Both Morton and Maine Timber, however, refused to sign the mortgage and related documentation. (Amend. Compl. ¶¶ 17-18.) Instead, Burr, Inc. executed the mortgage documents on February 12, 2009, on its own behalf and as the "Majority

---

[2] The other 50% owner of HomeSolutions is Denise Kummer. (Denise Kummer Aff. ¶ 1.) On January 16, 2014, the court dismissed Denise Kummer and Julie Burr from the case for lack of personal jurisdiction. *See Morton v. Burr*, 2014 WL 380895, at *5 (Me. Bus. & Consumer Ct. Jan. 16, 2014) (Nivison, J.).
[3] As noted in the Court's January 16, 2014, order on the motion to dismiss, the exhibits to the complaint are not under seal.

3

Member" of MSD, which documents were recorded on June 26, 2009 (the 2009 mortgage).[4] (Amend. Compl. ¶¶ 20-21; Amend. Compl. Exh. 5 at 1, 25.) Plaintiffs assert that the grant of the mortgage by MSD and Burr Inc. was unauthorized by MSD and without the consent or vote of the other MSD members. (Amend. Compl. ¶ 20.)

After HomeSolutions defaulted on the credit line, HomeSolutions, the Burrs, and two other parties signed a forbearance agreement with Rockbridge on June 16, 2009. (Amend. Compl. Exh. 16.) Rockbridge subsequently failed, and the MSD property mortgage was assigned to Defendant 2010-3 SFR Venture LLC (SFR). (Amend. Compl. ¶ 35; Amend. Compl. Exh. 22.) SFR has noticed the default and foreclosure of the mortgage on the MSD property. (Amend. Compl. ¶ 42; Amend. Compl. Exh. 20.) The amount due as of January 17, 2013, was $3,563,130. (Amend. Compl. ¶ 43; Amend. Compl. Exh. 21.)

Plaintiffs filed suit on September 24, 2012, in Franklin County Superior Court. Plaintiffs amended their Complaint on March 13, 2013, and again on January 30, 2014. Plaintiffs assert fraud, conversion, and violations of the Uniform Fraudulent Transfer Act (UFTA), 14 M.R.S. §§ 3571-82 (2013) against both Burr (Count II) and Burr, Inc. (Count III). In addition, the other members of MSD assert: 1) a direct action against Burr, Inc. pursuant to 31 M.R.S. § 1631 (2013), and 2) a derivative action pursuant to 31 M.R.S. § 1637(3) (2013) (Count IX). The matter was approved for transfer to the Business and Consumer Court on June 11, 2013. SFR has initiated foreclosure proceedings against Carll Burr and HomeSolutions in federal district

---

[4] The original master note is dated June 16, 2008; the subsequent modifications are dated August 23, 2008, November 6, 2008, and July 11, 2009. (Amend. Compl. Exhs. 12-15.) Even though the mortgage of the MSD property was not signed until February 12, 2009, from the first increase in credit in August of 2008 and onward, each amended and restated master note listed the mortgage on the MSD property as security for the loan to HomeSolutions, LLC. (Amend. Compl. Exhs. 13-15.) Each amended and restated master note also listed the mortgage on Carll Burr's Rangeley property as security for the loan to HomeSolutions, LLC. (Amend. Compl. Exhs. 12-15.)

4

court. *See 2010-3 SFR Venture LLC v. HomeSolutions Properties, LLC*, Docket No. 1:13-CV-00479-DBH (D. Me. Dec. 31, 2013).

The present motion was filed on February 20, 2014, and Plaintiffs filed their opposition along with the affidavit of Scott Morton on March 21, 2014. The affidavit assets that Morton and the other MSD members invested in developing the MSD property through building roads, installing sewer and water lines, and cutting trees to open up paths to the lake. (Morton Aff. ¶ 2.) Each MSD member paid taxes and other assessments. (Morton Aff. ¶¶ 3, 6.) Morton asserts that his efforts and the efforts of the other MSD members were in "reliance on Carll Burr's promise to convey Carll Burr Inc.'s interest in the MSD property to MSD. . . . The property was in his name temporarily as an accommodation to allow him to take advantage of "like-kind" tax rule or some similar reason." (Morton Aff. ¶ 6.)

Defendants filed the motion to strike the affidavit on April 8, 2014. The Court heard oral argument on both motions on May 20, 2014. Attorney Ron Cullenburg argued for the Plaintiffs and Attorney Daniel Murphy argued for the Burr Defendants. Attorney Paula Chambers appeared for 2010-3 SFR Venture LLC but did not orally argue.

## DISCUSSION

### I. Standard of Review

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). "The complaint is viewed 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle

5

the plaintiff to relief pursuant to some legal theory.'" *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quoting *McCormick v. Crane*, 2012 ME 20, ¶ 5, 37 A.3d 295).

> In other words, in evaluating the defendant's motion, the court makes no judgment about the merits of the plaintiff's claims, or about whether the plaintiff's claims will or will not be successful, or even whether or not there exists evidence to support those claims. Rather, *the court looks only at the allegations contained within the four corners of the complaint* in order to determine whether, on an abstract and theoretical basis, the allegations describe a legal claim.

*Lizotte v. Pierce*, 2006 WL 5255566 (Me. Super. Ct. Dec. 15, 2006) (emphasis added). In only limited circumstances may the Court consider extraneous documents, i.e., "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43. Otherwise, the Court is limited to the four corners of the complaint to determine the sufficiency of the plaintiff's allegations. *See Ripley v. Mercier*, 482 A.2d 850, 851 (Me. 1984). "A complaint is properly dismissed when it is beyond doubt that the plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 5, 983 A.2d 400 (quotation marks omitted).

## II. Motion to Strike

Defendants assert that the Morton affidavit should not be considered because it improperly attempts to create an evidentiary record, rather than an evaluation of the sufficiency of the complaint itself. The Court generally agrees. Plaintiffs have had numerous opportunities to revise their complaint in order to incorporate the theories of relief upon which they intend to rely. To the extent the affidavit alleges facts not within the Plaintiffs' First Amended and Restated Complaint or the Amendment to First Amended and Restated Complaint Amended Complaint, the Court does not consider them and grants the motion to strike.

6

Although the specific facts within the affidavit are not alleged in either the aforementioned pleadings, even if the Court were to consider them the outcome of this order would be no different. The affidavit is most relevant to Plaintiffs' fraud claim, but the facts within the affidavit do not cure the deficiencies within the fraud claim because Plaintiffs have still failed to allege how Defendants' representation of conveyance was fraudulent, rather than just a broken promise.

## III.    Motion to Dismiss

Although Plaintiffs assert most of their claims in a single count against each Defendant, the Court will separately address each cause of action asserted.

### A.    Fraud

A claim for fraud, or intentional misrepresentation, requires allegations that (1) the defendant made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing the plaintiff to act in reliance upon it; and (5) the plaintiff justifiably relied upon the representation as true and acted upon it to his or her damage. *See Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640. Moreover, fraud must be pleaded with particularity. *See* M.R. Civ. P. 9(b).

Plaintiffs assert that Burr and Burr, Inc. made false statements in the 2009 mortgage documents that indicated Burr, Inc. had the right to convey the mortgage to Rockbridge. (Amend. Compl. ¶¶ 69-70.) Defendants contend that Plaintiffs cannot maintain a cause of action for fraud based on statements made to a third party. Plaintiffs, however, argue that a statement to a third party can be the basis of a fraud claim, citing the Restatement (Second) of Torts:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance

7

communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Restatement (Second) of Torts § 533 (1977). Even presuming this provision from the Restatement is an accurate statement of the law in Maine, liability still depends upon the false statement being conveyed in some way to the plaintiff. Plaintiffs have not alleged that the statement to Rockbridge was ever conveyed to them, nor have they alleged how they relied upon that statement to their detriment. The essence of this case is the attempt by the Plaintiffs to undo the pledge of the MSD property to secure the loan to HomeSolutions, a pledge that the Plaintiffs knew of and to which they refused to consent. (Amend. Compl. ¶¶ 17-18.) Thus, even if the Plaintiffs had been the recipient of the allegedly false statement regarding ownership, they themselves knew the statement to be false—knowledge that is incompatible with a fraud claim.

In the alternative, Plaintiffs assert that Burr, Inc. made an "ongoing representation" that Burr, Inc. would convey its 80% interest in the subdivision to MSD after the like kind exchange that became a false misrepresentation when Burr and Burr, Inc. mortgaged the MSD property to Rockbridge. (Pls.' Opp'n 3; *see* Amend. Compl. ¶ 60A.) Except in circumstances not applicable here, a statement of future performance is not actionable on a fraud theory. *See Wildes v. Pens Unltd. Co.*, 389 A.2d 837, 840 (Me. 1978). Moreover, even if the statement regarding future conveyance was actionable, the statement must be false at the time that it was made, and not just constitute a broken promise. The complaint asserts that statement was made when MSD purchased the subdivision in 2004, and makes no reference to an "ongoing representation" by Burr or Burr, Inc. Plaintiffs also fail to assert how they relied on the statement made in 2004 to their detriment. In sum, because the allegations regarding the actions of Burr and Burr, Inc. do not constitute the tort of fraudulent misrepresentation as to the Plaintiffs, the claims must be dismissed.

8

**B.    Conversion**

The elements of the tort of conversion are:

(1) A showing that a person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. As with Plaintiffs' allegations against the Defendants that were dismissed from this matter, the allegations in the complaint regarding conversion are inartful, at best. Against both Burr and Burr, Inc., Plaintiffs assert that when Burr signed the 2009 mortgage, he converted MSD's equity in the MSD property. (Amend. Compl. ¶¶ 73(D), 75.) As noted in the Court's January 16, 2014, order, however, an interest in real property is not property that can be the subject of the tort of conversion. *See Morton v. Burr*, 2014 WL 380895, at *7 (Me. Bus. & Consumer Ct. Jan. 16, 2014) (Nivison, J.). *See also* Horton & McGehee, *Maine Civil Remedies* § 18-4 at 358 & n.15 (4th ed. 2004). Because there is no allegation that Burr or Burr, Inc. converted personal property, Plaintiffs are not entitled to relief under this theory.

**C.    UFTA Violations**

Plaintiffs have alleged that neither Burr nor Burr, Inc. was authorized to encumber the MSD property with the 2009 mortgage and such encumbrance constitutes a fraudulent transfer. (Amend. Compl. ¶¶ 62-64, 72, 75-76.) An unauthorized transaction, however, is not synonymous with fraudulent transfer and is not necessarily a violation of UFTA. A claim of fraudulent transfer pursuant to UFTA requires a debtor-creditor relationship between the parties and, most importantly, the establishment of the creditor's right to payment. *See* 14 M.R.S. §§ 3575-76. There is no allegation that at the time the 2009 mortgage was executed Burr or Burr, Inc. had any obligation to make any payment to the Plaintiffs. Plaintiffs rely on *Cook v.*

9

*Cook*, 574 A.2d 1353 (Me. 1990), but that case is inapposite because the right to payment arose from the divorce judgment during the pendency of the foreclosure proceeding. Plaintiffs also argue that the mortgage was fraudulently conveyed because the transfer was to an "insider." *See* 14 M.R.S. §§ 3572(7), 3576(2). Because, however, Plaintiffs have not alleged a right to payment or claim, it is immaterial whether the transfer was to a statutorily defined "insider" or not. Accordingly, Plaintiffs have not stated a claim pursuant to UFTA and those claims must be dismissed.

### D.    Direct and Derivative Action

Finally, Plaintiffs assert a direct action pursuant to 31 M.R.S. § 1631 and a derivative action pursuant to 31 M.R.S. §§ 1632, 1637 against Burr, Inc. (Amend. Compl. ¶¶ 113-115.) Neither statute affords Plaintiffs any relief.

Section 1631 permits a direct action by one member against another. The provision states:

> a member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the limited liability company agreement or this chapter or arising independently of the membership relationship[, provided that the] member maintaining a direct action under this section [pleads and proves] an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.

31 M.R.S. § 1631. Section 1631 does not provide an independent cause of action; it merely reiterates that a member may bring substantive claims against another member or the LLC in order to protect that member's own interests.[5] *See id.*

Plaintiffs also assert a derivative action, but it is clear there is no need to do so because MSD is a plaintiff in this matter. A derivative action permits a shareholder to sue on behalf of

---

[5] Defendants have not argued that the Court should dismiss all the claims brought by the individual members of MSD against them.

10

the corporation, asserting the corporations rights, when the corporation itself has refused to act, *see Voisine v. Berube*, 2011 ME 137, ¶ 4, 38 A.3d 310, whereas here, MSD has brought suit on its own behalf. Accordingly, the provisions of the LLC Act related to derivative actions have no applicability.

## CONCLUSION

In sum, the Plaintiffs have failed, in both the First Amended and Restated Complaint and the Amendment to First Amended and Restated Complaint Amended Complaint, to state claims against Burr and Burr, Inc. for fraud, conversion, and violations of UFTA in Counts II and III and failed to state an independent claim for relief in Count IX. Accordingly, and based on the foregoing analysis, the Court GRANTS the motion to strike and GRANTS the motion to dismiss of Carll S. Burr, III and Carll S. Burr, Jr., Inc. and dismisses Counts II, III, and IX pursuant to M.R. Civ. P. 12(b)(6).

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 5|23|14

_____
M. Michaela Murphy
**Justice, Maine Business & Consumer Court**

Entered on the Docket: 5·23·14
Copies sent via Mail___ Electronically ✓

**Scott H. Morton, Gary Patnode, Maine Timber & Beam, Inc. and Marbles Station Development LLC. v. Carll S. Burr, III, Carll S. Burr, Jr., Inc., Homesolutions Properties, LLC, and 2010-3 SFR Venture LLC.**
**BCD-RE-13-03**


**Scott H. Morton, Gary Patnode, Maine Timber & Beam, Inc. and Marbles Station Development LLC.**
    **Petitioners / Plaintiffs**

        Counsel:                  Ronald Cullenberg, Esq.
                                  120 Broadway
                                  P.O. Box 70
                                  Farmington, ME 04938-0070

**2010-3 SFR Venture LLC.**
    **Respondent / Defendant**

        Counsel:                  John Doonan, Esq.
                                  100 Cummings Center, STE 225D
                                  Beverly, MA 01915

**Homesolutions Properties, LLC**
    **Respondent / Defendant**

        Counsel:                  Jay Geller, Esq.
                                    100 Middle St
                                  P.O. Box 9729
                                  Portland, ME 04104-5029

**Carll S. Burr, III, Carll S. Burr, Jr., Inc.**
    **Respondents / Defendants**

        Counsel:                  Daniel Murphy, Esq.
                                  100 Middle St
                                  P.O. Box 9729
                                  Portland, ME 04104-5029

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-RE-13-03

JCN -CUM- 16 204

)
SCOTT H. MORTON,                          )
GARY PATNODE,                             )
MAINE TIMBER & BEAM, INC.,                )
MORTON & FURBISH AGENCY, and              )
MARBLES STATION DEVELOPMENT               )
LLC,                                      )
                                          )
          Plaintiffs,                     )          **DECISION AND ORDER**
                                          )          (Motions to Dismiss)
     v.                                   )
                                          )
CARLL S. BURR, III,                       )
CARLL S. BURR, JR., INC.,                 )
HOMESOLUTIONS PROPERTIES, LLC,            )
2010-3 SFR VENTURE LLC,                   )
JULIE BURR,                               )
DENISE KUMMER, and                        )
DANIEL KUMMER,                            )
                                          )
          Defendants                      )
                                          )

Defendants HomeSolutions Properties, LLC (HomeSolutions), Julie Burr, Denise

Kummer, and Daniel Kummer move to dismiss the complaint of Plaintiffs Scott H. Morton, Gary

Patnode, Maine Timber & Beam, Inc. (Maine Timber), Morton & Furbish Agency (M&F

Agency), and Marbles Station Development LLC (MSD) for lack of personal jurisdiction

pursuant to M.R. Civ. P. 12(b)(2) or, in the alternative, M.R. Civ. P. 12(b)(6).[1] Each Defendant

asserts that its contacts with the State of Maine are insufficient to justify the exercise of personal

---

[1] Defendants filed these as three separate motions, but the issues in each motion are largely the same, as evidenced by the parties incorporating the arguments from one motion into another by reference.
[2] Defendants submitted the affidavits of Denise Kummer and Daniel Kummer in support of the various motions. The court refers to the Denise Kummer affidavits as "De. Kummer Aff." and the Daniel Kummer affidavits as "Da. Kummer Aff."
[3] Plaintiffs filed 31 exhibits to the Amended Complaint under seal with the designation "CONFIDENTIAL –

1

jurisdiction by Maine courts. Alternatively, each Defendant asserts that Plaintiffs have failed to state a claim upon which relief can be granted.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are based on the Plaintiffs' Amended Complaint, the exhibits to the Amended Complaint, and the affidavits submitted by Defendants. *See Dorf v. Complastik Corp.*, 1999 ME 133, ¶¶ 13-14, 735 A.2d 984. Defendant Carl S. Burr, III is the president of Defendant Carll S. Burr, Jr., Inc. (Burr, Inc.), a Florida corporation. (Amend. Compl. ¶ 6.) The members of MSD are Burr, Inc., Morton, Patnode, Maine Timber, and M&F Agency; Burr, Inc. has a 75% ownership interest in MSD. (Amend. Compl. ¶¶ 1-2, 4.) Burr, Inc. (80%), Maine Timber (10%), and MSD (10%) collectively own a 15-lot subdivision in Rangeley, Maine (the MSD property). (Amend. Compl. ¶¶ 7-9.) Morton is the manager of MSD. (Amend. Compl. ¶ 3.)

HomeSolutions is a Florida limited liability company with a principal place of business in Northport, New York. (Amend. Compl. ¶ 23; De. Kummer Aff. ¶ 2.)[2] Julie Burr and Denise Kummer each own 50% of HomeSolutions. (De. Kummer Aff. ¶ 1.) Carll Burr is married to Julie Burr; Denise Kummer is married to Daniel Kummer. (De. Kummer Aff. ¶¶ 15, 17.) Julie Burr and the Kummers are all New York residents. (Da. Kummer Aff. ¶ 1; Amend. Compl. caption.) Carll Burr is a New York resident, but he owns vacation property at 17 Burr Road in Rangeley, Maine (the Burr property). (Amend. Compl. ¶ 5; Amend. Compl. Exh. 10.)

In June of 2008, HomeSolutions signed a master note for a line of credit in the amount of $1,000,000 with Rockbridge Commercial Bank (Rockbridge). (Amend. Compl. Exh. 12.)[3] As

---

[2] Defendants submitted the affidavits of Denise Kummer and Daniel Kummer in support of the various motions. The court refers to the Denise Kummer affidavits as "De. Kummer Aff." and the Daniel Kummer affidavits as "Da. Kummer Aff."

[3] Plaintiffs filed 31 exhibits to the Amended Complaint under seal with the designation "CONFIDENTIAL – Subject to Protective Order. This document is filed under seal pursuant to an Order of this Court entered in this action and shall not be opened except by the Court, or upon order of the Court or by stipulation of the parties." Plaintiffs did not move to seal the exhibits nor is there a confidentiality order signed by the court. The parties'

2

security for the HomeSolutions credit line, Carll Burr signed a personal guaranty in the amount of $1,000,000 and pledged the Burr property. (Amend. Compl. Exhs. 10, 17.) The note listed the Burr property as security for the initial loan. (Amend. Compl. Exh. 12.) Daniel Kummer also signed a personal guaranty in the amount of $1,000,000 to secure the initial HomeSolutions credit line. (Amend. Compl. Exh. 25.)

The amount of the credit line was increased to $2,000,000 in August of 2008 and then to $3,000,000 in November of 2008 (Amend. Compl. Exhs. 13-15); Carll Burr and Daniel Kummer personally guaranteed each increase in debt (Amend. Compl. Exhs. 18-19, 26-27). As further security, Burr, Inc. and MSD mortgaged the MSD property to secure the credit line from Rockbridge to HomeSolutions. (Amend. Compl. Exh. 5.) Burr, Inc. executed the mortgage documents on February 12, 2009, on its own behalf and as the "Majority Member" of MSD, which documents were recorded on June 26, 2009 (the 2009 mortgage). (Amend. Compl. ¶¶ 20-21; Amend. Compl. Exh. 5 at 1, 25.) Nevertheless, from the first increase in credit in August of 2008,[4] each amended and restated master note listed the mortgage on the MSD property as security for the loan to HomeSolutions, LLC. (Amend. Compl. Exhs. 13-15.) Each amended and restated master note also listed the mortgage on the Burr property as security for the loan to HomeSolutions, LLC. (Amend. Compl. Exhs. 12-15.)

Plaintiffs assert that the grant of the mortgage by MSD and Burr Inc. was unauthorized by MSD and without the consent or vote of the other MSD members. (Amend. Compl. ¶ 20.) Prior to Burr, Inc. executing the 2009 mortgage, Rockbridge had drafted the mortgage

stipulated confidentiality agreement that was filed with the court is *not* a court order. Plaintiffs' filing of documents under seal without motion or court order is therefore ineffective. Moreover, the documents are not ones that would normally qualify as being appropriate for a motion to seal. To the extent there is any implicit motion on the part of Plaintiffs to file the exhibits under seal, the motion is denied.

[4] The original master note is dated June 16, 2008; the subsequent modifications are dated August 23, 2008, November 6, 2008, and July 11, 2009. (Amend. Compl. Exhs. 12-15.) Even though the mortgage of the MSD property was not signed until February 12, 2009, the mortgage was listed as security for the loan from August 23, 2008, and onward. (Amend. Compl. Exh. 13-15.)

3

documents and listed MSD, Burr, Inc., and Maine Timber as mortgagors. (Amend. Compl. ¶ 16.) Morton, on behalf of MSD, and Maine Timber refused to sign the documents. (Amend. Compl. ¶¶ 17-18.)

After HomeSolutions defaulted on the credit line, HomeSolutions, the Burrs, and the Kummers signed a forbearance agreement with Rockbridge on June 16, 2009, in which agreement Rockbridge agreed not to pursue the collateral securing HomeSolutions's credit line until January 30, 2010. (Amend. Compl. Exh. 16.) The forbearance agreement lists, among others, the following items of collateral securing the loan to HomeSolutions: the mortgage on Carll Burr's vacation home in Rangeley, Maine; the mortgage on the MSD property in Rangeley, Maine; and personal guarantees signed by Carll Burr, Julie Burr, Daniel Kummer, and Denise Kummer. (*See* Amend. Compl. Exh. 16 recitals B, C.)

Rockbridge subsequently failed, and the MSD property mortgage was assigned to Defendant 2010-3 SFR Venture LLC (SFR). (Amend. Compl. ¶ 35; Amend. Compl. Exh. 22.) SFR has noticed the default and foreclosure of the mortgage of the MSD property. (Amend. Compl. ¶ 42; Amend. Compl. Exh. 20.) The amount due as of January 17, 2013, was $3,563,130. (Amend. Compl. ¶ 43; Amend. Compl. Exh. 21.)

Plaintiffs filed suit on September 24, 2012, in Franklin County Superior Court. Plaintiffs amended their Complaint on March 13, 2013. Plaintiffs assert the following causes of action against HomeSolutions: unjust enrichment (Count VI) and fraud, conversion, and violations of the Uniform Fraudulent Transfer Act (UFTA), 14 M.R.S. §§ 3571-82 (2013), (Count VII). Against Julie Burr, Daniel Kummer, and Denise Kummer, Plaintiffs assert fraud, conversion, and UFTA violations (Count VIII). Plaintiffs also seek a declaratory judgment that the 2009 mortgage of the MSD property is void (Count I).

4

## DISCUSSION

I.     PERSONAL JURISDICTION

A.     Standard of Review

"Maine's jurisdiction over nonresident defendants is controlled by its long-arm statute," 14 M.R.S. § 704-A (2013), which "is co-extensive with the due process clause of the United States Constitution, U.S. Const. amend. XIV, § 1." *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995). Thus, the Court "need only consider whether due process requirements have been satisfied" in addressing the question of personal jurisdiction. *Suttie v. Sloan Sales, Inc.*, 1998 ME 121, ¶ 4, 711 A.2d 1285. "Due process is satisfied when: (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Connelly v. Doucette*, 2006 ME 124, ¶ 7, 909 A.2d 221 (quotation marks omitted). Plaintiffs must satisfy the first two prongs of this test, "based on specific facts in the record," and then the burden shifts to Defendants "to demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150.

Because the Court is proceeding on the motion based upon the pleadings and affidavits, Plaintiffs "need only make a prime facie showing that jurisdiction exists" over each Defendant, and the Court construes the facts in Plaintiffs' favor. *See Dorf*, 1999 ME 133, ¶ 14, 735 A.2d 984. Plaintiffs' showing must be made on specific facts set forth in the record, going "beyond the pleadings and mak[ing] affirmative proof . . . by affidavit or otherwise." *Id.* ¶ 13 (quotation

5

marks omitted); *see also Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010) (discussing plaintiff's burden of proof upon a motion to dismiss for lack of personal jurisdiction).

B.    Analysis

Defendants argue that none of the prongs of the due process test have been satisfied: 1) Maine does not have a legitimate interest in the subject matter of the litigation; 2) Defendants could not have reasonably anticipated litigation in Maine; and 3) the exercise of jurisdiction would not comport with the notions of fair play and substantial justice.

1.    *Maine's legitimate interest in the litigation*

Defendants assert, and the court agrees, that Plaintiffs must demonstrate that Maine has an interest in the litigation beyond "providing its citizens with a means of redress against nonresidents." *Murphy*, 667 A.2d at 594. Such interests include "the protection of state 'industries, the safety of its workers, or the location of witnesses and creditors within its border,'" *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 15, 861 A.2d 662 (quoting *Murphy*, 667 A.2d at 594)), the protection of Maine citizens from fraudulent employment practices, *Suttie*, 1998 ME 121, ¶ 5, 711 A.2d 1285, and the protection of Maine citizens from false credit reports, *Bickford*, 2004 ME 111, ¶ 11, 855 A.2d 1150.

Plaintiffs argue that Maine's legitimate interest in the subject of this litigation is the allegedly unauthorized and potentially fraudulent encumbrance of Maine real estate owned in part by Maine residents to secure a loan to a non-resident. The Law Court has concluded that "Maine has a legitimate interest in . . . preventing debtors from using our boundaries as a shelter to shield their persons and their Maine real estate from process and creditors." *Dworman*, 2004 ME 142, ¶ 15, 861 A.2d 662. *Dworman* involved the attachment of Maine real estate owned by a non-resident debtor, *see* 14 M.R.S. § 704-A(2)(C) (providing that a person submits to the

6

jurisdiction of Maine's courts through "[t]he ownership, use or possession of any real estate situated in this State"), but not used to secure the debt. Maine's interest in the present dispute is arguably stronger because the real estate in question has been mortgaged to secure the debt of HomeSolutions, a foreign corporation, and Maine courts have exclusive jurisdiction over any foreclosure action on the mortgage of real estate in this state. Moreover, Plaintiffs allege that the 2009 mortgage was procured by fraud, and Maine has a legitimate interest in protecting its citizens from fraudulent practices. *See Suttie*, 1998 ME 121, ¶ 5, 711 A.2d 1285. Accordingly, the Court concludes that Maine has a legitimate interest in protecting its citizens from the allegedly fraudulent encumbering of Maine real estate owned by its citizens. *See Dworman*, 2004 ME 142, ¶ 15, 861 A.2d 662.

### 2. *Reasonable anticipation of litigation*

"A defendant may reasonably anticipate litigation in a particular forum when there is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Connelly*, 2006 ME 124, ¶ 9, 909 A.2d 221 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Court must thus consider Defendants' contacts with Maine and determine whether Defendants purposefully directed its activities at Maine residents or created continuing obligations between it and Maine residents. *See Murphy*, 667 A.2d at 594.

The Court begins by reviewing HomeSolutions's contacts with Maine that are unrelated to the present dispute. HomeSolutions is a Florida limited liability company with a principal place of business in New York. (De. Kummer Aff. ¶ 2.) Presently, HomeSolutions does not own property in Maine, supply goods or services in Maine, or employ any workers in Maine. (De. Kummer Aff. ¶¶ 3-4.) In the past, however, HomeSolutions owned two parcels of real

7

estate in Maine, which parcels were sold in 2008 and 2009, and had a limited contractual relationship with an independent contractor based in Maine. (De. Kummer Aff. ¶¶ 3, 5.) The present claims do not relate to this real estate or the independent contractor. (De. Kummer Aff. ¶ 5.) HomeSolutions has never maintained an office in Maine, advertised in Maine, commenced a lawsuit in Maine, or submitted to personal jurisdiction in Maine. (De. Kummer Aff. ¶¶ 6-10.) HomeSolutions's contacts with Maine do not rise to the level of the purposeful, continuous, and systematic contacts between a non-resident defendant and a forum state that would justify the exercise of general jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856-57 (2011); *Cossaboon*, 600 F.3d at 33.

With respect to HomeSolutions's contacts with the forum, the loan from Rockbridge to HomeSolutions is secured by two parcels of Maine real estate, one owned by Carll Burr and one owned by MSD, Burr, Inc., and Maine Timber. (Amend. Compl. ¶¶ 7-9; Amend. Compl. Exh. 12-15.) The loan was not negotiated, executed, or performed in Maine. (De. Kummer. Aff. ¶ 11.) HomeSolutions contends that it "never anticipated that, by entering into the Rockbridge Loan Agreements, it would be subject to litigation in, and the exercise of personal jurisdiction by, the courts of the State of Maine." (De. Kummer Aff. ¶ 12.)

As previously noted, each amended and restated master note evidencing the loan from Rockbridge to HomeSolutions listed the mortgage on the Burr property as security for the loan. (Amend. Compl. Exhs. 12-15.) In addition, from the first increase in credit and onward,[5] each amended and restated master note listed the mortgage on the MSD property as security for the loan to HomeSolutions, LLC. (Amend. Compl. Exhs. 13-15.)

---

[5] Even though the mortgage of the MSD property was not signed until February 12, 2009, the mortgage was listed as security for the loan from August 23, 2008, and onward. (Amend. Compl. Exh. 13-15.)

8

Entering into a loan secured by a mortgage on real estate in Maine constitutes direct contact with this forum and purposeful activity directed at Maine residents. *See Murphy*, 667 A.2d at 594. The fact that it was the property of Carll Burr, MSD, Burr, Inc., and Maine Timber, rather than property owned by HomeSolutions, that was being encumbered does not alter the significance of the mortgage. HomeSolutions executed the agreements with full knowledge that in the event of default, Rockbridge (or its successor) could pursue foreclosure of the Maine real estate—an action that would be required to be brought in Maine courts and in which HomeSolutions, as the borrower, would be a necessary party.

Moreover, contrary to HomeSolutions's argument, the mortgaging of the MSD property does not constitute the "unilateral activity of another party," that has been deemed insufficient to satisfy the constitutional minimum contacts analysis. Once again, an important factor is HomeSolutions's knowledge of the mortgage on real estate in Maine upon entering into the loan with Rockbridge. *See Mahon v. E. Moline Metal Prods.*, 579 A.2d 255, 256 (Me. 1990) (affirming the exercise of personal jurisdiction based on the corporation's knowledge that its products would be used in Maine). Because HomeSolutions knew that the loan was secured by Maine real estate, which could reasonably result in a foreclosure action in Maine in the event of a default, the authority regarding unilateral activity upon which authority Plaintiffs' rely, is not persuasive.

In essence, in this case Plaintiffs attempt to negate or undo the mortgage granted on the MSD property to secure the loan to HomeSolutions. Plaintiffs' cause of action arises directly out of HomeSolutions forum-based contacts and it would be reasonable for HomeSolutions to expect litigation within Maine regarding those contacts. *See Bickford*, 2004 ME 111, ¶ 13, 855 A.2d 1150.

9

As to the reasonable anticipation of litigation in Maine by Julie Burr, Denise Kummer, and Daniel Kummer, each of these individual Defendants are non-residents. The affidavits do not reflect ownership of property in Maine by these individuals or any other connection with Maine in their individual capacities other than Julie Burr and Denise Kummer's membership in HomeSolutions and Daniel Kummer's personal guarantee of HomeSolutions debt. These three individuals were undoubtedly aware of the mortgaging of Maine property to secure the debt of HomeSolutions. Nevertheless, the loan itself was to HomeSolutions, not to its members or to Daniel Kummer, who had no legal interest in HomeSolutions. The issue for the Court is whether the Kummers and Julie Burr, in their individual capacities, could reasonably anticipate litigation in Maine. The Court concludes, based on the record evidence, that they could not.

Plaintiffs have provided no other evidence of Julie Burr's or Denise Kummer's connections to Maine other than the membership in HomeSolutions. The Court must respect the corporate form of HomeSolutions, however, and cannot impute HomeSolutions's contacts with Maine to that of its members. Because Plaintiffs have provided no other evidence of contacts with Maine, the Court concludes that there is no personal jurisdiction over Julie Burr or Denise Kummer in their individual capacities.

The Court reaches the same conclusion with respect to Daniel Kummer. Although Daniel Kummer signed at least three personal guaranties with respect to the loan to HomeSolutions (*see* Amend. Compl. Exhs. 25-27), each guaranty is not contingent upon Rockbridge (or its successor) pursuing remedies it may have against HomeSolutions or in any other security, i.e. the personal guaranty is independent of any remedy the lender may have by foreclosing on real estate in Maine. (*See* Amend. Compl. Exhs. 25 at 2; 26 at 2; 27 at 2.) Because the guaranty is independent of any other remedy, Daniel Kummer, unlike HomeSolutions, could not have

10

reasonably anticipated litigation in Maine related to the foreclosure or pursuance of Maine property.

Plaintiffs have not provided sufficient proof that these individual Defendants could have reasonably anticipated litigation in Maine, and the Court will grant the motions to dismiss for lack of personal jurisdiction of Julie Burr, Denise Kummer, and Daniel Kummer.

### 3. *Traditional notions of fair play and substantial justice*

The third and final portion of the test is whether Defendant HomeSolutions can show that requiring it to litigate in Maine would be unfair because it does not comport with traditional notions of fair play and substantial justice. *See Bickford*, 2004 ME 111, ¶ 14, 855 A.2d 1150. "This analysis requires consideration of 'a variety of factors including the nature and purpose of defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties.'" *Cavers v. Houston McLane Co.*, 2008 ME 164, ¶ 36, 958 A.2d 905 (quoting *Labbe v. Nissen Corp.*, 404 A.2d 564, 570 (Me. 1979)).

HomeSolutions realleges its minimum contacts arguments to assert that the exercise of personal jurisdiction would not comport with fair play and substantial justice. As explained above, the Court has concluded that Plaintiffs have shown sufficient minimum contacts for HomeSolutions. HomeSolutions has not suggested any burden that would result from litigating in Maine, and has otherwise failed to satisfy its burden on the third prong of the due process test. *See Bickford*, 2004 ME 111, ¶ 10, 855 A.2d 1150. Accordingly, the Court will deny HomeSolutions's motion to dismiss for lack of personal jurisdiction.

11

## II.   FAILURE TO STATE A CLAIM

HomeSolutions, Julie Burr, and the Kummers also moved to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted. Because the Court has concluded there is no personal jurisdiction over Julie Burr, Denise Kummers, or Daniel Kummers, the Court does not address their 12(b)(6) motion. The Court address only the motion of HomeSolutions and the claims asserted against it.[6]

### A.   Standard of Review

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Cmty. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). "The complaint is viewed 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quoting *McCormick v. Crane*, 2012 ME 20, ¶ 5, 37 A.3d 295). "The purpose of a complaint in modern notice pleading practice is to provide defendants with fair notice of the claim against them." *Shaw*, 683 A.2d at 503 (quotation marks omitted). "A complaint is properly dismissed when it is beyond doubt that the plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim." *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 5, 983 A.2d 400 (quotation marks omitted).

---

[6] The Court understands Plaintiffs' general contention to be that all parties who knew of the mortgaging of the MSD property are liable to the Plaintiffs. If the Court were to address the merits of Count VIII, that analysis would be the same as the analysis pertaining to Count VII, at section II, B(2), *infra*. To the extent that there is a legal theory to hold Julie Burr, Denise Kummer, or Daniel Kummer responsible for damages to Plaintiffs, the facts and theories as alleged do not state a claim upon which the Court can grant any relief to Plaintiffs. *See Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 5, 983 A.2d 400.

12

B.    Analysis

1.    *Unjust enrichment (Count VI)*

Unjust enrichment is an equitable cause of action that permits recovery "for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863 (quotation marks omitted).

> To sustain a claim for unjust enrichment, a claimant must establish that it conferred a benefit on the other party . . . that the other party had appreciation or knowledge of the benefit . . . and . . . that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.

*Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14, 760 A.2d 1041 (quotation marks omitted).

Plaintiffs assert that the benefit conferred on HomeSolutions is the $3,000,000 loan from Rockbridge and that HomeSolutions was unjustly enriched by the proceeds of the loan from Rockbridge secured by the MSD property. (Amend. Compl. ¶¶ 92-93.) Plaintiffs, however, have not asserted that it was the Plaintiffs who conferred the aforementioned benefit on HomeSolutions. Fundamentally, Plaintiffs' suit is based upon the premise that its property was encumbered by unauthorized acts of Carll Burr and Burr, Inc., a premise that is incompatible with a cause of action for unjust enrichment. Because Plaintiffs have not alleged any facts that would entitle them to relief pursuant to an unjust enrichment theory, the count must be dismissed.

2.    *Fraud, conversion, and fraudulent transfer (Count VII)*

In a single count, Plaintiffs assert fraud, conversion, and fraudulent transfer against HomeSolutions. None of these causes of action have been properly or sufficiently asserted.

13

A claim for fraud, or intentional misrepresentation, requires allegations that (1) the defendant made a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing the plaintiff to act in reliance upon it; and (5) the plaintiff justifiably relied upon the representation as true and acted upon it to his or her damage. *See Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640.

Plaintiffs have neither asserted any statement made by HomeSolutions to Plaintiffs upon which statement they relied, nor indicated the way in which HomeSolutions's statements are false. Moreover, fraud must be pleaded with particularity. *See* M.R. Civ. P. 9(b). Plaintiffs' general averments do not properly apprise HomeSolutions or the court of the specific nature of the fraud, i.e., how Plaintiffs were misled or imposed upon. *See Semo v. Goudreau*, 147 Me. 17, 20-21, 83 A.2d 209, 211 (1951).

The elements of the tort of conversion are:

(1) A showing that a person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. Plaintiffs' allegations regarding conversion are not entirely clear. Construed favorably to Plaintiffs, the only interest in any property of which HomeSolutions could have intentionally dispossessed Plaintiffs are rights in the MSD property. Real property, however, is not property that is subject to the tort of conversion. *See* 1 DAN D. DOBBS ET AL., THE LAW OF TORTS § 63 at 174 (2d ed. 2011) ("no action for conversion would lie for dispossession of an interest in real property"). Because HomeSolutions cannot convert real property, Plaintiffs are not entitled to relief under this theory.

Finally, a claim of fraudulent transfer pursuant to UFTA requires a debtor-creditor relationship between the parties and the establishment of the creditor's right to payment. *See* 14

14

M.R.S. §§ 3575-76. Although HomeSolutions borrowed funds, it did not borrow funds from any of the Plaintiffs. Plaintiffs, therefore, are not creditors of HomeSolutions or, based on this record, any other party, including Rockbridge, as contemplated by the UFTA. Accordingly, Plaintiffs have no "claim" against HomeSolutions, as that term is defined by UFTA: "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 14 M.R.S. § 3572(3).

### 3. *Declaratory judgment (Count I)*

As previously stated, the essence of this case is the attempt of Plaintiffs to undo the pledge of MSD property to secure the loan to HomeSolutions. Plaintiffs' declaratory judgment action seeks a declaration that the mortgage of the MSD property is void and that MSD is not liable to SFR. (Amend. Compl. ¶¶ 48-60.) Plaintiffs, however, have not identified any particular Defendants against whom they are asserting the claim as they did with the other causes of action. This cause of action is most clearly asserted against Carll Burr and Burr, Inc., but the nature of the relief sought clearly affects the rights of SFR as successor to the lender and HomeSolutions as the borrower.

Viewed in the light most favorable to Plaintiffs, the Court concludes that the declaratory judgment action can be construed to be against HomeSolutions because if Plaintiffs are successful, HomeSolutions will have less collateral to satisfy its debt to SFR. The Court, however, will require Plaintiffs to clarify the nature of the relief that they seek against HomeSolutions and the other remaining Defendants.[7]

---

[7] On the Motions to Dismiss of Defendants Carll S. Burr, III, and Carll S. Burr, Jr., Inc., the Court previously concluded that regardless of the way in which Plaintiffs captioned their causes of action, Plaintiffs have stated a cause of action against Defendants Carll S. Burr, III, and Carll S. Burr, Jr. The Court, however, believes it is necessary for Plaintiffs to clarify the theories by which they seek to establish Defendants' liability.

15

CONCLUSION

Based on the foregoing analysis, the Court orders as follows:

1. The motions to dismiss of Julie Burr, Denise Kummer, and Daniel Kummer pursuant to M.R. Civ. P. 12(b)(2) are GRANTED; the motions to dismiss of Julie Burr, Denise Kummer, and Daniel Kummer pursuant to M.R. Civ. P. 12(b)(6) are deemed MOOT;

2. The motion to dismiss of HomeSolutions pursuant to M.R. Civ. P. 12(b)(2) is DENIED; the motion to dismiss of HomeSolutions pursuant to M.R. Civ. P. 12(b)(6) is GRANTED as to Counts VI and VII and otherwise DENIED.

3. Within 14 days of this order, Plaintiffs shall amend their complaint to state the relief sought against HomeSolutions with more specificity

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/16/14

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 1-17-14
Copies sent via Mail __ Electronically ✓

16

**Scott H. Morton, Gary Patnode, Maine Timber & Beam, Inc., Morton & Furbish Agency, and Marbles Station Development LLC v. Carll S. Burr, III, Carll S. Burr, Jr., Inc., Homesolutions Properties, LLC, 2010-3 SFR Venture LLC, Julie Burr, Denise Kummer, and Daniel Kummer**
**BCD-RE-13-03**

**Scott H. Morton, Gary Patnode, Maine Timber & Beam, Inc., Morton & Furbish Agency, and Marbles Station Development LLC**
**Petitioners / Plaintiffs**

Counsel:                     Ronald Cullenberg, Esq.
                             Cullenberg Law Offices
                             120 Broadway
                             PO Box 70
                             Farmington, ME 04938

**Homesolutions Properties, LLC, Julie Burr, Denise Kummer, and Daniel Kummer**
**Respondents / Defendants**

Counsel:                     Jay Geller, Esq.
                             Bernstein, Shur, Sawyer & Nelson
                             100 Middle St
                             PO Box 9729
                             Portland, ME 04104

**Daniel Kummer**
**Respondents / Defendants**

Counsel:                     Paul McDoanld, Esq.
                             Bernstein, Shur, Sawyer & Nelson
                             100 Middle St
                             PO Box 9729
                             Portland, ME 04104